No. 2016-1411

# United States Court of Appeals for the Federal Circuit

PAICE LLC & THE ABELL FOUNDATION, INC.,
*Appellants*,

v.

FORD MOTOR COMPANY,
*Appellee*.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2014-00570.

## BRIEF OF APPELLEE

Frank A. Angileri
Sangeeta G. Shah
John P. Rondini
Andrew B. Turner
BROOKS KUSHMAN P.C.
1000 Town Center
Twenty-Second Floor
Southfield, MI 48075-1238
(248) 358-4400

Matthew J. Moore
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
matthew.moore@lw.com

*Counsel for Appellee Ford Motor Company*

June 16, 2016

Claims 30, 32 and 33 of U.S. Patent No. 8,214,097 provide:

**30.** A hybrid vehicle, comprising:

one or more wheels;

an internal combustion engine operable to propel the hybrid vehicle by providing torque to the one or more wheels, wherein said engine has an inherent maximum rate of increase of output torque;

at least one electric motor operable to propel the hybrid vehicle by providing torque to the one or more wheels;

a battery coupled to the at least one electric motor, operable to provide electrical power to the at least one electric motor;

and a controller, operable to control the flow of electrical and mechanical power between the engine, the at least one electric motor, and the one or more wheels, responsive to an operator command;

[1] wherein said controller controls said at least one electric motor to provide additional torque when the amount of torque being provided by said engine is less than the amount of torque required to operate the vehicle; and

[2] wherein said controller controls said engine such that a rate of increase of output torque of said engine is limited to less than said inherent maximum rate of increase of output torque, and

[3] wherein the controller is operable to limit the rate of change of torque produced by the engine such that combustion of fuel within the engine occurs at a substantially stoichiometric ratio.

**32.** The hybrid vehicle of claim **30**, wherein when it is desired to start said engine, said engine is rotated at at least 300 rpm, whereby the engine is heated, prior to supply of fuel for starting the engine.

**33.** The hybrid vehicle of claim **32**, wherein fuel and air are supplied to said engine at a fuel:air ratio of no more than 1.2 of the stoichiometric ratio for starting the engine.

Appx68 (bracketed numbers added and formatting altered).

# CERTIFICATE OF INTEREST

Counsel for Appellee certifies the following:

1. Full Name of Party represented by me:

   Ford Motor Company

2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is:

   N/A

3. Parent corporations and publicly held companies that own 10 percent or more of stock in the party:

   Ford Motor Company states that it has no parent corporation. As of December 31, 2015, no publicly-traded companies have disclosed that they own 10% or more of Ford's common stock.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   **Brooks Kushman P.C.:** John E. Nemazi, Michael D. Cushion
   **Dentons US LLP:** Lissi Mojica, Kevin Greenleaf

June 16, 2016

/s/ Matthew J. Moore
Matthew J. Moore

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ..... i

TABLE OF AUTHORITIES ..... iv

STATEMENT OF RELATED CASES ..... 1

STATEMENT OF THE ISSUES ..... 2

STATEMENT OF THE CASE ..... 3

A. The ’097 Patent ..... 3

B. The Prior Art ..... 6

1. The Severinsky Patent ..... 6

2. The Anderson Paper ..... 6

3. The Two Other Prior Art References ..... 7

C. Board Proceedings ..... 7

SUMMARY OF THE ARGUMENT ..... 10

ARGUMENT ..... 13

I. STANDARD OF REVIEW ..... 13

II. THE BOARD CORRECTLY CONSTRUED CLAIM 30 ..... 13

A. Paice’s Claim Construction Argument Is Waived ..... 14

B. Regardless, The Board Correctly Understood The Claims ..... 16

III. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD’S OBVIOUSNESS FINDINGS ..... 18

A. Substantial Evidence Supports The Board’s Findings That Severinsky And Anderson Disclose The “Wherein” Limitations ..... 18

1. Under The Board’s Correct Construction, Severinsky And Anderson Disclose The “Wherein” Clauses ..... 19

**Page**

2. Even Under Paice's Untimely And Incorrect Construction, Severinsky And Anderson Disclose The "Wherein" Clauses ....................24

B. Substantial Evidence Supports The Board's Findings On Combining Severinsky And Anderson ....................25

1. The Board Carefully Explained The Reasons For Combining Severinsky With Anderson ....................25

2. The Board Properly Rejected Paice's Arguments That Anderson "Would Not Have Worked" With Severinsky ....................27

3. Paice's Other Arguments Are Unavailing ....................29

C. Substantial Evidence Supports The Board's Findings On The Obviousness Of Claims 32 And 33 ....................31

1. The Board Properly Found Claim 32 Obvious ....................31

2. The Board Properly Found Claim 33 Obvious ....................33

CONCLUSION ....................34

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Baxter International, Inc.*,
678 F.3d 1357 (Fed. Cir. 2012) ....................14

*Cisco Systems, Inc. v. Lee*,
557 F. App'x 963 (Fed. Cir.), *cert. denied*, 135 S. Ct. 377 (2014) ....................14

*In re Cuozzo Speed Technologies*,
LLC, 793 F.3d 1268 (Fed. Cir. 2015), *cert. granted sub nom. Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 890 (U.S. Jan. 15, 2016) (No. 15-446) ....................16

*Key Pharmaceuticals v. Hercon Laboratories Corp.*,
161 F.3d 709 (Fed. Cir. 1998) ....................15

*Lazare Kaplan International, Inc. v. Photoscribe Technologies, Inc.*,
628 F.3d 1359 (Fed. Cir. 2010) ....................14

*Malta v. Schulmerich Carillons, Inc.*,
952 F.2d 1320 (Fed. Cir. 1991) ....................13, 30

*Merck & Cie v. Gnosis S.P.A.*,
808 F.3d 829 (Fed. Cir. 2015) ....................13, 19, 22, 29, 32

*Northern Telecom Ltd. v. Samsung Electronics Co.*,
215 F.3d 1281 (Fed. Cir. 2000) ....................15

*In re NTP, Inc.*,
654 F.3d 1279 (Fed. Cir. 2011) ....................13, 22

*Regents of the University of Minnesota v. AGA Medical Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ....................14

*Sage Products, Inc. v. Devon Industries, Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ....................14, 15

*Trivascular, Inc. v. Samuels*,
812 F.3d 1056 (Fed. Cir. 2016) ....................13

**Page(s)**

## REGULATIONS

37 C.F.R. § 42.100(b) ....................................................................................16

42 Fed. Reg. 32,907 (June 28, 1977) (codified at 40 C.F.R. pt. 86, subpt. A (1977))....................................................................................26

## STATEMENT OF RELATED CASES

There have been no prior appeals in this *inter partes* review ("IPR") proceeding. Several appeals concern the patent at issue in this appeal (U.S. Patent No. 8,214,097 ("'097 patent")) or related patents (U.S. Patent Nos. 7,237,634 ("'634 patent"), 7,104,347 ("'347 patent"), and 7,559,388 ("'388 patent")):

(a) No. 16-1411 ('097 patent) [this appeal];

(b) Nos. 16-1746 & -2034 (consolidated) ('634 patent);

(c) No. 16-2033 ('097 patent);

(d) Nos. 16-1412 & -1415 (consolidated) ('347 patent);

(e) No. 16-1647 ('388 patent); and

(f) No. 16-1745 ('347 patent).

Appeals (a), (b), and (c) are companion cases and assigned to the same merits panel. ECF No. 29. Appeals (d), (e), and (f) are companion cases and assigned to the same merits panel. *Id.*

Several other IPR proceedings concern those same patents. And the district court action that precipitated all of these IPR proceedings also concerns those same patents: *Paice LLC v. Ford Motor Co*., No. 1:14-cv-492 (D. Md.). Appx3920-69. That action is stayed pending the IPRs.

Some or all of these cases could directly affect or be directly affected by the present appeal.

# STATEMENT OF THE ISSUES

1. Whether the Patent Trial and Appeal Board ("the Board") properly applied the plain meaning of the three "wherein" clauses of claim 30 of the '097 patent where Paice did not seek to construe *any* claim terms in this IPR before the Board (thereby waiving the construction that it asserts for the first time here), and, in any event, the Board's implicit construction (not Paice's new construction) is the only one that is consistent with the claim language, specification, and prosecution history.

2. Whether the Board's factual findings underlying its determination that claim 30 of the '097 patent and certain dependent claims are unpatentable as obvious over the prior art—*i.e.*, the Board's findings regarding the scope of the prior art and the reasons to combine the prior art—are supported by substantial evidence where the Board weighed the record evidence, credited the testimony of Ford's expert, and carefully explained its conclusions.

## STATEMENT OF THE CASE

This appeal, like each of the seven other related appeals, arises from an IPR concerning one of five patents that Paice asserted against Ford in a pending district court suit. Because those five patents contain more than 500 claims and Paice refused to limit its assertions, Ford filed a series of IPR petitions challenging the patentability of those claims.

The claims at issue in this appeal—independent claim 30 and dependent claims 31-33, 35, 36, and 39 of the ’097 patent—are directed to specific control functions for a hybrid vehicle. Appx68. On September 28, 2015, based on detailed factual and credibility determinations, the Board found those claims unpatentable as obvious over the prior art (principally, the “Severinsky” patent and the “Anderson” paper). Appx1-18. Substantial evidence supports the Board’s findings. And the lone claim construction issue that Paice raises is both untimely (because it was never raised before) and without merit (because it contradicts the claim language and intrinsic record).

### A. The ’097 Patent

The ’097 patent, titled “Hybrid Vehicles,” issued on July 3, 2012. Appx21. The only independent claim at issue in this appeal is claim 30, which recites a hybrid vehicle with admittedly conventional features (wheels, engine, motor,

battery, and controller) along with three purportedly inventive control functions (labeled 1-3 below):

> **30.** A hybrid vehicle, comprising:
>
> one or more wheels;
>
> an internal combustion engine operable to propel the hybrid vehicle by providing torque to the one or more wheels, wherein said engine has an inherent maximum rate of increase of output torque;
>
> at least one electric motor operable to propel the hybrid vehicle by providing torque to the one or more wheels;
>
> a battery coupled to the at least one electric motor, operable to provide electrical power to the at least one electric motor;
>
> and a controller, operable to control the flow of electrical and mechanical power between the engine, the at least one electric motor, and the one or more wheels, responsive to an operator command;
>
> [1] wherein said controller controls said at least one electric motor to provide additional torque when the amount of torque being provided by said engine is less than the amount of torque required to operate the vehicle; and
>
> [2] wherein said controller controls said engine such that a rate of increase of output torque of said engine is limited to less than said inherent maximum rate of increase of output torque, and
>
> [3] wherein the controller is operable to limit the rate of change of torque produced by the engine such that combustion of fuel within the engine occurs at a substantially stoichiometric ratio.

Appx68 (bracketed numbers added and formatting altered).

This appeal focuses on the three "wherein" clauses that recite the purportedly inventive control functions: (1) providing additional torque to the

electric motor when the gas engine is not providing enough (referred to herein as the "motor-supplement" function), (2) limiting the engine's "rate of increase of output torque" to less than the engine's maximum possible rate of increase (referred to herein as the "rate-limit" function), and (3) limiting the engine's "rate of increase of output torque" so that combustion "occurs at a substantially stoichiometric ratio" (referred to herein as the "stoichiometry" function). *Id.* "Stoichiometry" refers to the ideal fuel-to-air ratio that provides complete consumption of both the fuel and air during combustion, and sometimes is expressed as 1.0. *See* Appx117-18; Appx190-91 ¶¶ 68-72; Appx614. A "rich" fuel-to-air ratio (>1.0) means there is too much fuel, and a "lean" fuel-to-air mixture (<1.0) means there is too little fuel. *Id.*

Also at issue in this appeal are dependent claims 32 and 33, which provide:

> **32.** The hybrid vehicle of claim **30**, wherein when it is desired to start said engine, said engine is rotated at at least 300 rpm, whereby the engine is heated, prior to supply of fuel for starting the engine.
>
> **33.** The hybrid vehicle of claim **32**, wherein fuel and air are supplied to said engine at a fuel:air ratio of no more than 1.2 of the stoichiometric ratio for starting the engine.

Appx68.

Paice does not separately defend the other claims that the Board found unpatentable (claims 31, 35, 36, and 39) and concedes that they rise or fall with claim 30.

### B. The Prior Art

The two principal prior art references at issue in this appeal are the "Severinsky" patent (U.S. Patent No. 5,343,970, Appx841-67) and the "Anderson" paper (Appx772-80). Those are the only two references relevant to claim 30.

#### 1. The Severinsky Patent

The Severinsky patent, titled "Hybrid Electric Vehicle," issued on September 6, 1994 (Appx841), to Alex J. Severinsky, who is also a co-inventor on the '097 patent (Appx21). The Severinsky patent describes a hybrid vehicle with a controller that operates the electric motor to provide additional torque "when torque in excess of the capabilities of [the gas] engine … is required." Appx860 (14:15-18). For example, the patent describes an "acceleration/hill climbing mode" in which torque is supplied by both the electric motor and the gas engine. Appx864 (22:48-51). And it emphasizes the goal of "lower[ing] the toxic hydrocarbon and carbon monoxide emissions." Appx859 (12:13-17).

#### 2. The Anderson Paper

The Anderson paper, titled "The Effects of APU Characteristics on the Design of Hybrid Control Strategies for Hybrid Electric Vehicles," was published in 1995 by Catherine Anderson and Erin Pettit. Appx772. It describes hybrid control strategies for minimizing emissions by maintaining a stoichiometric air-to-fuel ratio. Appx778. It explains that a stoichiometric ratio can be difficult to maintain when an engine's torque is changing too fast (which is known as a "fast

transient") and that this problem can be reduced by ensuring "slow transients." *Id.*; *see also* Appx321-26 ¶¶ 347-53, 356-57. Anderson also acknowledges that its teachings on maintaining stoichiometry "are sufficiently general that they can be applied to any type of vehicle." Appx775.

#### 3. The Two Other Prior Art References

The other two prior art references at issue in this appeal are the "Yamaguchi" patent (U.S. Patent No. 5,865,263, Appx781-97), which teaches pre-heating an engine prior to starting, and the "Katsuno" patent (U.S. Patent No. 4,707,984, Appx798-840), which teaches a fuel-to-air ratio of no more than 1.2. Those two references are relevant to claims 32 and 33, respectively.

### C. Board Proceedings

On February 19, 2014, Paice sued Ford in district court, asserting that Ford infringes five patents, including the '097 patent. Appx3924-25 ¶¶ 11-15 (*Paice LLC v. Ford Motor Co.*, No. 1:14-cv-492 (D. Md.)). Paice asserted several hundred patent claims and would not commit to limiting future assertions of additional claims. Faced with Paice's massive assertions and the one-year statutory deadline for filing IPRs, Ford filed 25 IPRs with the Board.

In the IPR at issue in this appeal, Ford sought review of claims 30-33, 35, 36, 38, and 39 of the '097 patent on April 4, 2014. *See* App94, Appx100. The

Board instituted review of all challenged claims, except claim 38, on September 30, 2014 (Appx3630-42), and, heard oral argument on July 1, 2015 (Appx4705).[1]

On September 28, 2015, the Board issued its final decision finding the instituted claims unpatentable as obvious. Appx1-20. The Board found claim 30 obvious based on its detailed factual findings that Severinsky and Anderson teach the three wherein clauses (Appx7-12) and that a skilled artisan would have combined the references (Appx12-15).[2]

The Board found that Severinsky discloses the first wherein clause's motor-supplement function because "Severinsky expressly teaches [that] the '[m]icroprocessor 48 … activates electric motor 20 when torque in excess of the capabilities of engine 40 is required'" and that "'the motor 20 is used to supplement the output torque of engine 40.'" Appx7-8 (second alteration in original) (emphasis omitted) (quoting Appx860 (14:15-18), Appx858 (10:36-38)). The Board found that Anderson discloses the second wherein clause's rate-limit function because "Anderson is clearly focused on a hybrid control strategy that slows engine transients"—which, based on the testimony of Ford's expert (Dr. Stein), "suggests limiting the rate of increase of the engine's output torque."

[1] The Board heard oral argument in this IPR together with five other IPRs. Appx4705 n.1, Appx4924.

[2] There was no dispute that the recited hardware features of the hybrid vehicle (wheels, engine, motor, battery, and controller) were well-known in the art.

Appx9-10 (citing Appx321-25 ¶¶ 347-50, 353 (Stein Decl.)).[3] The Board found that Severinsky also discloses the rate-limit function because it teaches controlling the rate of fuel supply, which "limits the rate of increase of output torque of the engine." Appx8 (quoting Appx323-24 ¶¶ 351-52 (Stein Decl.)). And the Board found that Anderson discloses the third wherein clause's stoichiometry function because "Anderson's control strategy 'maintains the stoichiometric air fuel ratio' by slowing 'the speed of the transient' so it is not 'too fast.'" Appx11 (quoting Appx778 (Anderson)).

The Board then found reasons to combine Severinsky with Anderson, based on the express teachings of those references and Dr. Stein's expert testimony. Appx12-15 (citing, *inter alia*, Appx 339-40 ¶ 397 (Stein Decl.); Appx4047-53 ¶¶ 37-46 (Stein Reply Decl.)). The Board determined that a skilled artisan would have combined Anderson's known strategy of slowing engine transients with Severinsky's base hybrid control system in order to better maintain stoichiometric combustion and, thereby, reduce carbon emissions. Appx15 (citing Appx4052-54 ¶¶ 44-49, 4076-77 ¶ 88 (Stein Reply Decl.)). The Board, therefore, found claim 30

[3] The Board credited Dr. Stein's testimony that "a skilled artisan would understand that slowing engine transients means slowing the rate of increase of engine output torque to something less than the engine's maximum rate of increase"—just like the rate-limit function in the second wherein clause. Appx10 (quoting Appx324-25 ¶ 353).

obvious, along with dependent claims 31, 35, 36, and 39 (which Paice did not separately defend). Appx15.

The Board also found dependent claims 32 and 33 obvious. Appx15-18. Based on the evidence and arguments, including the testimony of both parties' declarants, the Board found that Yamaguchi disclosed claim 32's pre-heating limitation, that Katsuno disclosed claim 33's fuel:air ratio, and that there was a reason to combine Yamaguchi and Katsuno with Severinsky and Anderson. *Id*.

## SUMMARY OF THE ARGUMENT

**1.** At the outset, Paice argues that the Board misconstrued claim 30. According to Paice, the motor-supplement function of the first wherein clause must be performed in conjunction with the rate-limit function of the second wherein clause and the stoichiometry function of the third wherein clause. Paice's argument fails for two reasons.

First, Paice did not present this claim construction to the Board. It is, therefore, waived.

Second, in any event, the Board's implicit construction is correct, whereas Paice's construction is contrary to the claim language and specification. The plain language of the wherein clauses makes clear that they can each be performed individually or simultaneously. For example, the first wherein clause only states that the controller controls the electric motor to provide additional torque "when

the amount of torque being provided by said engine is less than the amount of torque required to operate the vehicle." Appx68 (cl. 30). Paice improperly seeks to allow the motor-supplement function to be performed only "when the rate of increase of engine output torque is purposely limited." Blue 27. But the first wherein clause imposes no such limitation. Purposely limiting the engine output torque's rate of increase is a *separate* capability recited in the second and third wherein clauses. The specification and prosecution history also make clear that the motor-supplement function can be performed even when the controller is not limiting the engine output torque's rate of increase.

**2.** The rest of Paice's arguments challenge the Board's fact-findings underlying its obviousness determination. Those challenges also fail because the Board's findings are supported by substantial evidence. The Board explained its reasoning in detail, weighing the evidence and making credibility determinations. This Court should not disturb those well-grounded factual findings.

First, Paice challenges the Board's findings that Severinsky and Anderson disclose the wherein clauses of claim 30. Paice contends that Severinsky and Anderson do not disclose limiting the rate of increase of the engine output torque *while* using the electric motor to meet the shortfall in torque required to operate the vehicle. This argument fails because it depends on Paice's incorrect (and untimely) construction. But even under Paice's construction, there is substantial

evidence on the record that Anderson teaches supplementing with the motor *while* limiting the rate of change of engine torque to maintain stoichiometry.

Paice also argues that Anderson does not teach limiting the rate of increase of *torque*. But the Board rejected that same argument and the Board's finding is supported by substantial evidence. As the Board pointed out, Anderson expressly describes the engine's "transient capabilities" in terms of "speed *and torque*," and expert testimony establishes that "slowing engine transients means slowing the rate of increase of engine output torque." Appx9-12.

Second, Paice challenges the Board's determination that there were reasons to combine Severinsky and Anderson. The Board found reasons to combine Severinsky's base control system (which includes the first wherein clause's motor-supplement capability) with Anderson's disclosure of the rate-limit and stoichiometry functions (the second and third wherein clauses). As the Board explained, a skilled practitioner would have combined the references because both recite hybrid control strategies, both acknowledge the goal of maintaining stoichiometric combustion, and both seek to reduce carbon emissions. Appx15.

Substantial evidence supports these findings as well. Anderson expressly states, for example, that its teachings "can be applied to any type of vehicle." Appx775. And Paice's own expert admitted that at the time of the invention of the

’097 patent, government regulations made stoichiometric combustion strategies desirable for all vehicles.

Finally, Paice challenges the Board’s finding regarding the obviousness of claims 32 and 33. Those, too, are supported by substantial evidence.

## ARGUMENT

### I. STANDARD OF REVIEW

The Board’s claim construction is reviewed *de novo* where, as here, it is based on the intrinsic record. *See Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1061 (Fed. Cir. 2016). The Board’s factual findings underlying its obviousness determination (including findings on what a reference teaches and whether there are reasons to combine references) are reviewed for substantial evidence. *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 833-34 (Fed. Cir. 2015). In reviewing for substantial evidence, this Court will not reweigh the evidence or disturb the Board’s credibility determinations. *See In re NTP, Inc.*, 654 F.3d 1279, 1292-93 (Fed. Cir. 2011); *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1333 (Fed. Cir. 1991).

### II. THE BOARD CORRECTLY CONSTRUED CLAIM 30

Paice first argues that the Board misconstrued claim 30’s three “wherein” clauses, which Paice calls the three “controller limitations.” Blue 29-34. As discussed, each of the three wherein clauses describes one function: the motor-

supplement function, the rate-limit function, and the stoichiometry function. Appx68; *supra* at 4-5. According to Paice, the controller must perform all three functions "at the same time." Blue 29-30. That argument, however, is waived: Paice never raised *any* claim construction argument before the Board in this IPR and cannot do so for the first time here. In any event, the Board's implicit construction is correct, whereas Paice's construction is contrary to the claim language and intrinsic record.

### A. Paice's Claim Construction Argument Is Waived

Arguments not raised before the Board are waived and this Court will not consider them in the first instance, absent exceptional circumstances. *See In re Baxter International, Inc*., 678 F.3d 1357, 1362 (Fed. Cir. 2012); *Sage Prods., Inc. v. Devon Indus., Inc*., 126 F.3d 1420, 1426 (Fed. Cir. 1997). For example, a party cannot seek to construe a term for the first time on appeal and fault the Board for not doing so. *See Cisco Sys., Inc. v. Lee*, 557 F. App'x 963, 971-72 (Fed. Cir.), *cert. denied*, 135 S. Ct. 377 (2014); *Regents of the Univ. of Minn. v. AGA Med. Corp*., 717 F.3d 929, 946 (Fed. Cir. 2013); *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010); Appx5030 (Scheduling

Order).[4] But that is what Paice is attempting to do here—and Paice has not asserted any extraordinary circumstances to excuse the waiver.

Paice challenges the "Board's construction" of the three "wherein" clauses and complains that "the Board never explained" and "did not address" why it read the three wherein clauses differently than Paice asserts on appeal. Blue 33-34. But Paice did not raise *any* claim construction arguments (on those or any other terms) during the proceedings in this IPR—not in its preliminary response (Appx3579-81), its patent owner response (Appx3643-45), or at the oral hearing. Indeed, at the hearing, although Paice raised claim construction arguments for the other five IPRs being argued, it notably did *not* raise any construction arguments in the IPR under review in this appeal. *See* Appx4389-98 (Patent Owner Demonstratives). Although Paice argued that the prior art did not disclose practicing the motor-supplement clause when practicing the rate-limit clause, Paice never asserted (let alone explained why) the claim language or specification of the '097 patent requires any such simultaneous functionality. *See* Appx3685 (Patent Owner Resp.); Appx4891 (187:8-12) (Oral Hearing Tr.). That claim construction is, therefore, waived.

[4] *See also*, *e.g.*, *N. Telecom Ltd. v. Samsung Elecs. Co*., 215 F.3d 1281, 1290 (Fed. Cir. 2000); *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998); *Sage*, 126 F.3d at 1426.

### B. Regardless, The Board Correctly Understood The Claims

In any event, the Board's decision correctly reflects the plain meaning of claim 30—especially in light of the "broadest reasonable construction" standard that applies in Board proceedings. *See* 37 C.F.R. § 42.100(b); *In re Cuozzo Speed Techs.*, LLC, 793 F.3d 1268, 1275-79 (Fed. Cir. 2015), *cert. granted sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 890 (U.S. Jan. 15, 2016) (No. 15-446). The three wherein clauses in claim 30 each sets forth a separate function that the controller must be able to perform. Appx68 (cl. 30). Contrary to Paice's construction, which insists on "t[ying] together" all three functions (Blue 29), the Board correctly understood that claim 30 does not require the controller to perform some or all of the functions *simultaneously*.

The first wherein clause (reciting the motor-supplement function) only states that the controller must be capable of controlling the "electric motor to provide additional torque when the amount of torque being provided by [the] engine is less than the amount of torque required to operate the vehicle." Appx68 (cl. 30). The motor-supplement clause does not specify when, why, or how the torque being provided by the engine is less than the "torque required to operate the vehicle." In particular, that clause does not, as Paice contends, further limit the motor-supplement function to situations "when the rate of increase of engine output torque is purposely limited." Blue 27. Likewise, the second and third wherein

clauses only require that the controller be able to perform the rate-limit and stoichiometry functions, respectively; they do not require the controller to perform them simultaneously with the first wherein clause's motor-supplement function.

Therefore, Paice's proposed construction has no basis in the claim language. Indeed, Paice's construction would render superfluous the second wherein clause (*i.e.*, limiting the rate of increase in torque) in light of the more specific third wherein clause (*i.e.*, limiting the rate of increase in torque to maintain a particular fuel-to-air ratio). Moreover, Paice has related patent claims (at issue in one of the related appeals) that *do* have the limitation that Paice seeks to impose here. In the '388 patent, for example, certain claims expressly recite that the motor must be able to provide additional torque when the rate of change in torque exceeds a specified limit. *E.g.*, '388 patent cl. 1; *see* Appx4343 (Ford Demonstratives). The claims here have no such requirement.

The specification and prosecution history also support the Board's understanding (and foreclose Paice's proposed construction) because they expressly contemplate performing the first wherein clause's motor-supplement function independent from the functions in the other two wherein clauses. In particular, the specification describes at least two distinct scenarios in which the "torque being provided by [the] engine" is less than the "torque required": (1) because the torque required "exceeds 100% of the engine's maximum torque

output," Appx56-57 (35:54-60, 37:15-22), *or* (2) because the controller is intentionally limiting the torque being provided by the engine, Appx57-58 (38:62-39:14).   The prosecution history likewise contemplates both scenarios.   *See* Appx615-18.  Paice's construction improperly ignores the first scenario and seeks to limit the claims to the second scenario.   Contrary to Paice's arguments, the specification and prosecution history confirm that, as the Board implicitly recognized, claim 30's wherein clause limitations describe functionality that can be—but is not *necessarily*—performed in tandem.

## III.   SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S OBVIOUSNESS FINDINGS

Paice raises three factual challenges to the Board's conclusion that the '097 patent claims are obvious over the prior art:  according to Paice, (1) the Severinsky and Anderson references do not disclose the three wherein clauses in claim 30, (2) there is no reason to combine Severinsky and Anderson, and (3) the factual findings underlying the Board's conclusion of obvious on claims 32 and 33 are wrong.   Those arguments fail; the Board's determinations are supported by substantial evidence.

### A.   Substantial Evidence Supports The Board's Findings That Severinsky And Anderson Disclose The "Wherein" Limitations

Paice does not dispute that the prior art discloses claim 30's hardware limitations—*e.g.*, wheels, engine, motor, battery, and a controller (Appx68 (60:4-

14)). *See* Blue 34-41. Paice only challenges the prior art's disclosure of claim 30's "wherein" clauses. However, after carefully considering the substantial record and assessing the reliability and credibility of the testimony and other evidence, the Board found that, as a factual matter, Severinsky and Anderson disclose the wherein clauses. Appx7-12. Substantial evidence supports those findings. *See Merck*, 808 F.3d at 834-37.

### 1. Under The Board's Correct Construction, Severinsky And Anderson Disclose The "Wherein" Clauses

Under the Board's correct (implied) construction, Paice concedes (by not contesting) that Severinsky discloses the first wherein clause and that Anderson discloses the third wherein clause; Paice only challenges the prior art's disclosure of the second wherein clause. Regardless, the Board's findings on all three clauses are supported by substantial evidence.

#### a. The First Wherein Clause's Motor-Supplement Function Is Disclosed In Severinsky

The first wherein clause recites controlling the motor "to provide additional torque" when the engine is providing "less than the amount of torque required to operate the vehicle." Appx 68 (cl. 30). The Board found that, under the Board's implied construction, Severinsky describes this clause. Appx7-8. That finding is not disputed by Paice (*see* Blue 34-41) and, in any event, is supported by substantial evidence. As the Board explained, Severinsky "expressly teaches" that

the "[m]icroprocessor … activates electric motor 20 when torque in excess of the capabilities of engine 40 is required" (Appx7-8 (first alteration in original) (emphasis omitted) (quoting Appx860 (14:15-18) (Severinsky)))—which is "no different than what [the first wherein clause] requires" (*id.* (citing Appx320-21 ¶¶ 344-46 (Stein Decl.))).

Paice only argues that the prior art does not disclose performing the first wherein clause (supplementing with the motor) *while also performing* the second wherein clause (limiting the engine's rate of increase). *See, e.g.*, Blue 35 ("Neither Severinsky nor Anderson limits the rate of increase of the engine output torque *while* using the electric motor to meet the shortfall in torque …." (emphasis added)). That argument, however, depends on Paice's claim construction which, as discussed, is both waived and wrong. *Supra* at 13-18.

**b. The Second Wherein Clause's Rate-limit Function Is Disclosed In Anderson And Severinsky**

The second wherein clause recites controlling the engine so that its "rate of increase of output torque" is limited to less than the engine's inherent maximum rate of increase. Appx68 (cl. 30). The Board found that Anderson and Severinsky each disclose this rate-limit function (Appx8-10) and substantial evidence supports those findings.

As the Board explained, Anderson expressly teaches a "control strategy that slows engine transients in an effort to reduce carbon emissions," which "suggests

limiting the rate of increase of the engine's output torque." Appx9-10 (citing Appx321-23 ¶¶ 347-50 (Stein Decl.)). Anderson states that "slower transients are desirable for reducing emissions," Appx9 (quoting Appx778 (Anderson)), and Ford's expert (Dr. Stein) testified "persuasive[ly]" that a skilled artisan would understand that "slowing engine transients means slowing the rate of increase of engine output torque to something less than the engine's maximum rate of increase," Appx10 (quoting Appx324-25 ¶ 353 (Stein Decl.)). Therefore, there is ample evidence supporting the Board's finding.

Paice argues that Anderson's disclosure of "allowing slow engine transients" applies only to "power transients" and "speed transients," not to torque transients. Blue 37-39 (emphasis omitted). However, the Board expressly addressed those factual arguments and did "not find them persuasive." Appx11-12. As the Board explained, "Paice fails to account for Anderson's description of the engine's 'transient capabilities' in terms of 'power output' and 'combinations of speed *and torque*.'" Appx12 (emphasis added by Board) (citing Appx778 (Anderson); Appx322-23 ¶¶ 348-50 (Stein Decl.); Appx4043-45 ¶¶ 30-31 (Stein Reply Decl.)). And, as discussed, the Board expressly credited Ford's expert testimony equating "slowing engine transients" with "slowing the rate of increase of engine output *torque* to something less than the engine's maximum rate of increase." Appx10 (quoting Appx324-25 ¶ 353 (Stein Decl.)) (emphasis added). The Board correctly

rejected "Paice's attempt to focus on isolated passages in Anderson, to the exclusion of its import as a whole." Appx11-12 (citing Appx322-23 ¶¶ 348-50 (Stein Decl.); Appx4043-45 ¶¶ 30-31, Appx4053-58 ¶¶ 47-54 (Stein Reply Decl.)); *see Merck*, 808 F.3d at 835 ("prior art must be considered as a whole" in determining whether substantial evidence supports the Board's finding of reason to combine). The Board considered and rejected Paice's expert testimony (which Paice again relies upon in this appeal) and instead found Ford's expert testimony more persuasive. Appx10.

Paice also argues that Severinsky does not teach the second wherein clause. Blue 36. The Board also properly found otherwise based on substantial evidence. The Board explained that "Severinsky teaches that the 'microprocessor controller 48 controls the rate of supply of fuel to the engine.'" Appx8 (quoting Appx858 (10:4-6) (Severinsky)). And the Board found (relying on Ford's expert) that, by controlling the rate of fuel supply, the Severinsky controller is necessarily selecting, and therefore limiting, the rate of increase at any given time. Appx8 (citing Appx323-24 ¶¶ 351-52 (Stein Decl.); Appx4054-57 ¶¶ 49-53 (Stein Reply Decl.)).

At root, Paice does nothing more than invite this Court to reweigh the evidence, which is improper because the Court is reviewing only for substantial evidence. *In re NTP, Inc.*, 654 F.3d at 1292 ("This court does not reweigh

evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings."). Substantial evidence supports the Board's findings that Anderson and Severinsky each separately teach the second wherein clause's rate-limit function.

**c. The Third Wherein Clause's Stoichiometry Function Is Disclosed In Anderson**

The third wherein clause recites limiting the engine's rate of increase of output torque so that combustion "occurs at a substantially stoichiometric ratio" (*i.e.*, the ideal fuel-to-air ratio). Appx68. The Board found that Anderson discloses this limitation (Appx10-11) and Paice does not challenge this finding. With good reason—substantial evidence supports it. Anderson expressly states that it "maintains the stoichiometric air fuel ratio" by slowing "the speed of the transient." Appx778. And Ford's expert (Dr. Stein) testified that Anderson's disclosure of "slowing engine transients (i.e., limiting 'the rate of change of engine torque produced by the engine') helps the vehicle's closed loop feedback system maintain operation near the stoichiometric air/fuel ratio, thereby reducing emissions." Appx326 ¶ 357 (Stein Decl.) (emphasis omitted).

### 2.    Even Under Paice's Untimely And Incorrect Construction, Severinsky And Anderson Disclose The "Wherein" Clauses

Even under Paice's improper construction, which requires the controller to perform the three wherein clauses' functions concurrently, the prior art discloses all three.[5]

Anderson explains that emissions can be reduced by "using a hybrid strategy that only allows slow transients," but notes that "this places greater strain on the [battery]."    Appx778 (Anderson).    The Board found that "allow[ing] slow transients" describes the rate-limit function of the second wherein clause, Appx9-10 (emphasis and citation omitted), and Ford's expert testified that "plac[ing] greater strain on the [battery]" refers to using the battery to power the motor, and supplement the engine, during those rate-limited "slow transients," Appx3846 (236:10-25) (Stein Dep.).    *See also* Appx4035-39 ¶¶ 11-18 (Stein Reply Decl.). Thus, as Ford's expert testified, a skilled artisan would have understood Anderson as teaching controlling "engine operation to only allow slow transients (i.e., limit the rate of increase of engine torque), while controlling the electric motor to provide supplementary torque."    Appx4039 ¶ 17 (Stein Reply Decl.).

In other words, Anderson links the rate-limit function (recited in the second wherein clause) with the motor-supplement function (recited in the first wherein

---

[5] Paice incorrectly states that there is "no dispute that the prior art fails" under Paice's construction.    Blue 35.

clause). *See* Appx3846 (236:10-25) (Stein Dep.); Appx4035-39 ¶¶ 11-18 (Stein Reply Decl.). Also, as discussed, Anderson discloses limiting the engine's rate of increase to ensure a substantially stoichiometric ratio (the third wherein clause). Accordingly, even under Paice's construction, the prior art discloses the wherein clauses.

### B. Substantial Evidence Supports The Board's Findings On Combining Severinsky And Anderson

Paice next challenges the Board's determination that a skilled artisan would have had reason to combine Anderson with Severinsky. That factual finding, however, is supported by substantial evidence, including expert testimony, which the Board discussed at length. Appx12-15.

#### 1. The Board Carefully Explained The Reasons For Combining Severinsky With Anderson

As the Board explained, a skilled artisan would have combined the "basic hybrid control strategy of Severinsky" (*i.e.*, using the electric motor to supply additional torque when necessary, per the first wherein clause) with Anderson's teachings about limiting the rate of engine torque increase (the second wherein clause) and maintaining a stoichiometric ratio (the third wherein clause) in order to (1) "better maintain stoichiometric combustion" and (2) "reduce carbon emissions." Appx12-15 (citing Appx339-40 ¶397 (Stein Decl.); Appx4047-54

¶¶ 37-49, 4076-77 ¶ 88 (Stein Reply Decl.)). Individually or collectively, that provides ample reason to combine.

First, Anderson expressly states that "[t]he thought processes presented in this paper"—including limiting the torque increase to maintain the stoichiometric ratio—"are sufficiently general that *they can be applied to any type of vehicle*." Appx13 (quoting Appx775 (Anderson) (emphasis added by Board)). That alone provides a compelling reason to apply Anderson's teachings to Severinsky's basic strategy for controlling hybrid vehicles. Also, there was no dispute that, at the time of the '097 patent, stoichiometric combustion had become the auto industry's standard, in response to federal emissions regulations. *See generally* 42 Fed. Reg. 32,907 (June 28, 1977) (codified at 40 C.F.R. pt. 86, subpt. A (1977)). Indeed, Paice's expert admitted that by the 1980s "pretty much everything went to [a] stoichiometric strategy," Appx4146 (54:19-23) (Hannemann Dep.), and Ford's expert agreed, Appx4074-77 ¶¶ 87-88 (Stein Reply Decl.). That provides additional cause to employ Anderson's teachings about limiting torque transients to maintain stoichiometry. *See, e.g.*, Appx188-200 ¶¶ 64-83, 339-40 ¶ 397 (Stein Decl.); Appx4074-77 ¶¶ 87-88 (Stein Reply Decl.).

Second, providing further impetus to combine, the Board pointed to the common goal of Severinsky and Anderson to reduce carbon emissions. Appx15. Severinsky emphasizes that it is desirable to "lower the toxic hydrocarbon and

carbon monoxide emissions." Appx859 (12:13-17). Anderson likewise states that "one of the principle aims of a hybrid vehicle is to reduce vehicle emissions," and further points out that one of the ways to do so is by limiting the engine's rate of change to maintain stoichiometry. Appx778. Therefore, a skilled practitioner would have had clear reason to employ Anderson's teachings in concert with Severinsky.

The Board's findings, grounded in expert testimony and the prior art references themselves, are supported by substantial evidence.

**2. The Board Properly Rejected Paice's Arguments That Anderson "Would Not Have Worked" With Severinsky**

Paice principally argues (as it did below) that a skilled artisan would not have combined Severinsky and Anderson because the combination allegedly "would not have worked." Blue 42; *see* Appx12; Appx3679-83. Relying on its own expert 16 times, Paice asserts that Anderson's control strategy of using "slow transients" only applies to a "series" hybrid system, whereas Severinsky's control strategy requires "fast transients" because it is a "parallel" hybrid system. Blue 42-49 (emphasis omitted).[6] Paice made the same factual arguments before the Board and the Board rejected them. Appx12-15. Those arguments fare no better here.

---

[6] In a parallel-type hybrid system, the electric motor and gas engine are both directly connected to (and can both provide torque to) the wheels. In a series-type hybrid system, only the electric motor is coupled directly to the wheels; the gas

First, the Board rejected Paice's contention that Anderson is limited to "series" systems and found instead that Anderson's teaching relates to *both* "series" and "parallel" systems: "a skilled artisan would have understood from reading Anderson as a whole that 'slow engine transients' are the optimum strategy for both series-type and parallel-type vehicles." Appx13-15 (citing Appx774-76 (Anderson); Appx4049-50 ¶ 41, 4069 ¶ 79 (Stein Reply Decl.)). Substantial evidence supports that finding. As the Board explained, Anderson "clear[ly]" indicates that her control strategy "applies equally to both parallel and series-type vehicles"—indeed, "[i]mmediately following" Anderson's description of both series-type and parallel-type vehicles, Anderson emphasizes that "[t]he thought processes presented in this paper are sufficiently general that *they can be applied to any type of vehicle*." Appx13-14 (quoting Appx775 (Anderson) (emphasis added by Board)). The Board also credited Ford's expert, who confirmed that, although Anderson describes the design "tradeoffs" by discussing a "series" system, Anderson "makes it clear" that a skilled artisan looks at these same "trade-offs" in both "series and parallel configurations." Appx14 (quoting Appx3832-33 (179:22-182:14) (Stein Dep.)); *see also* Appx4059-64 ¶¶ 57-65 (Stein Reply).

Second, the Board also considered and rejected Paice's factual assertion that Anderson teaches that every parallel system must perform "fast power transients."

---

engine is used to charge the battery, which in turn drives the electric motor. *See* Appx182-83 ¶¶ 53-56 (Stein Decl.).

Appx13 (citation omitted). Substantial evidence supports that finding as well. As the Board explained, Anderson "speaks of 'fast power transients' only when discussing 'two distinct extremes,' not the optimum strategy for a hybrid vehicle" and Anderson then "points out that 'neither of these [extreme] strategies would be the optimum strategy' for the hybrid vehicles 'under consideration.'" *Id*. (alteration in original) (quoting Appx776 (Anderson)). Anderson makes clear (and Ford's expert confirmed) that the "slow transients" strategy applies equally to series and parallel hybrid vehicles. Appx13-14 (citing Appx3832-33 (179:22-182:14) (Stein Dep.)); *see also*, *e.g*., Appx4063-64 ¶ 61-65, Appx4069 ¶ 79 (Stein Reply Decl.).

Therefore, there is ample evidence supporting the Board's conclusion that "a skilled artisan would have been led to combine Anderson's known strategy of slowing engine transients with Severinsky's base, parallel-type control system in order to better maintain stoichiometric combustion and, thereby, reduce carbon emissions." Appx15; *see Merck*, 808 F.3d at 833-37.

### 3. Paice's Other Arguments Are Unavailing

Paice also argues against combining Severinsky and Anderson because Severinsky discusses "lean" operation, which is different from Anderson's "stoichiometric" operation. Blue 41-42. However, even when discussing a "lean burn mode," Severinsky recognizes the desirability of stoichiometric operation by

stating that air will be supplied only "slightly in excess of the amount required for stoichiometric combustion." Appx859 (12:13-17). Severinsky thereby acknowledges the importance of stoichiometric combustion in lowering emissions and provides a balanced view of the tradeoffs associated with a lean strategy. *See* Appx859 (12:13-33), Appx864 (21:9-22). In addition, as Paice's expert acknowledged, lean operation was no longer an option by the time of the '097 patent: in light of federal regulations, "pretty much everything went to [a] stoichiometric strategy." Appx4146 (54:19-21) (Hannemann Dep.); *see also* Appx4076-77 ¶88 (Stein Reply Decl.).

Finally, Paice argues that the Board erred in relying on Dr. Stein's testimony that a skilled artisan would have combined Severinsky and Anderson. Blue 49-51. Paice contends that Dr. Stein's testimony was "conclusory" and not credible because he purportedly "did not properly consider the prior art references." Blue 49. But, far from being "conclusory," Dr. Stein's testimony explaining his rationale for combining Severinsky and Anderson spans over 30 pages. *See* Appx339-40 ¶ 397 (Stein Decl.); Appx4046-77 ¶¶ 36-88 (Stein Reply Decl.). And the Board repeatedly found Dr. Stein credible. *See*, *e.g.*, *supra at* 8-9, 21-23, 25-26, 29. This Court should reject Paice's invitation to reweigh the evidence and determine Dr. Stein's credibility anew. *See, e.g.*, *Malta*, 952 F.2d at 1333 ("[T]he appellate court … must not determine the credibility of witnesses …."). The Board

properly relied on his testimony, in addition to the prior art itself—both of which provide ample support for the Board's findings that the prior art discloses the wherein clauses of claim 30. *See supra* at 18-29.

### C. Substantial Evidence Supports The Board's Findings On The Obviousness Of Claims 32 And 33

Finally, Paice's challenges to the Board's findings on claims 32 and 33 also fail. *See* Blue 51-54.

#### 1. The Board Properly Found Claim 32 Obvious

Claim 32, which depends from claim 30, provides for pre-heating the engine before starting it: "when it is desired to start said engine, said engine is rotated at at least 300 rpm, whereby the engine is heated, prior to supply of fuel for starting the engine." Appx68. The Board found claim 32 obvious over Yamaguchi, in combination with Severinsky and Anderson. Appx15-17.

Paice does not dispute that the Yamaguchi reference teaches pre-heating prior to starting. *See* Appx781-97; *supra* at 7, 10. Paice instead argues that Severinsky teaches away from claim 32. According to Paice, Severinsky requires operating at lower temperatures to reduce emissions caused by operating in lean burn (*i.e.*, less than the stoichiometric fuel-to-air ratio). Blue 52. The Board, however, found that Severinsky does not teach away—and that factual finding is supported by substantial evidence. Appx16-17.

First, the Board found that Severinsky's discussion of lower temperatures relates only to *operating* the engine, not to *starting* the engine: "the engine will be *operated* in lean burn mode … at a lower temperature … than is a conventional engine." Appx16 (alterations in original) (emphasis added) (quoting Appx859 (12:13-21) (Severinsky)). And the Board credited Ford's expert, Dr. Stein, who confirmed that reading of Severinsky. *Id.* Severinsky says nothing against pre-heating prior to starting (which is the subject of claim 32).

Second, the Board explained that the obviousness combination consists of Yamaguchi along with "Severinsky, *as modified by Anderson's stoichiometric control strategy*." Appx16; *see also* Appx778 (Anderson). In other words, the combination is premised on a system operating not with a lean fuel mixture (which led Severinsky to operate the engine at lower temperatures) but instead with a stoichiometric fuel mixture (where "you don't really need to worry about a lower temperature," as Paice's expert admitted). Appx16 (citing Appx4160 (68:8-23) (Hannemann Dep.)). The Board also credited Ford's expert, who confirmed that conclusion. *Id.* (citing Appx4079 ¶ 93 (Stein Decl.)).

Each of these determinations (which Paice largely ignores) provides substantial evidence supporting the Board's finding that Severinsky does not teach away from claim 32. *See Merck*, 808 F.3d at 833-37 (finding substantial evidence for Board's factual finding that prior art does not teach away from combination).

### 2.      The Board Properly Found Claim 33 Obvious

Claim 33, which depends from claim 32, further provides for starting the engine at a fuel:air ratio of no more than 1.2 times the ideal (stoichiometric) ratio. Appx68 ("wherein fuel and air are supplied to said engine at a fuel:air ratio of no more than 1.2 of the stoichiometric ratio for starting the engine"). The Board found claim 33 obvious over Katsuno in combination with the other three prior art references. Appx17-18.

Paice again challenges the Board's underlying factual findings, raising arguments that the Board rejected. First, Paice argues that Katsuno's teachings only apply to a "fuel:air correction ratio" and not an actual "fuel:air ratio." Blue 52-53. However, the Board addressed that argument, explaining that the claim does not specify whether it is an actual ratio or a correction ratio and that, in any event, as Ford's expert testified, under certain conditions Katsuno's correction amount "will create a 1.2 stoichiometric ratio in … the combustion process." Appx18 (quoting Appx3852-53 (261:20-263:8) (Stein Dep.)). The Board, therefore, concluded that Katsuno's correction amount teaches the 1.2 ratio in claim 33.

Second, Paice argues that Katsuno's air:fuel ratio correction routine is not used when starting the engine. Blue 53-54. Paice asserts that Ford's expert (Dr. Stein) testified that a "richer mixture" is used during starting. Blue 54 (citing

Appx3845 (232:9-21) (Stein Dep.)). But Dr. Stein also submitted testimony (which Paice ignores) that this rich mixture is *not* necessary during hot starts and that claim 33 is directed to a hot start because it depends from claim 32. Appx4086-87 ¶¶107-11.

Therefore, substantial evidence supports the Board's finding that Katsuno teaches the limitation of claim 33—starting at a fuel-to-air ratio of no more than 1.2. Also, the Board credited Dr. Stein's conclusion that there is a rationale for combining Katsuno with the other prior art references, Appx18 (citing Appx4087-90 ¶¶ 112-16), and Paice does not challenge that finding on appeal.

## CONCLUSION

For the foregoing reasons, the Board's decision should be affirmed.

Respectfully submitted,

/s/ Matthew J. Moore

Matthew J. Moore
Gabriel K. Bell
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
matthew.moore@lw.com

Frank A. Angileri
Sangeeta G. Shah
John P. Rondini
Andrew B. Turner
BROOKS KUSHMAN P.C.
1000 Town Center
Twenty-Second Floor
Southfield, MI 48075-1238
(248) 358-4400

*Counsel for Appellee Ford Motor Company*

June 16, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2016, I caused the foregoing Brief of Appellee to be served by electronic means through the Court's CM/ECF system on counsel for all parties who are registered CM/ECF users.


/s/ Matthew J. Moore
Matthew J. Moore

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 7,005 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief was prepared using Microsoft Word 2010 in 14-point Times New Roman font.

Dated:  June 16, 2016                     /s/ Matthew J. Moore
                                          Matthew J. Moore